UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NATIONAL ELEVATOR BARGAINING )
ASSOCIATION; and KONE, INC.,           )
                                                      )
    Plaintiffs;                          )          CIVIL ACTION NO.
                                                      )
v.                                                    )
                                                      )
LOCAL 21, INTERNATIONAL UNION    )
OF ELEVATOR CONSTRUCTORS;       )
DONALD MITCHELL, Individually and as )
Business Manager; JAMES MURNAN,     )
Individually and as Business Representative;)
and all others conspiring, acting in concert  )
or otherwise participating with them or       )
acting in their aid or behalf;                       )
                                                      )
    Defendants.                        )

**AMENDED COMPLAINT AND**
**REQUEST FOR EXPEDITED HEARING**

**THE PARTIES**

1.      Plaintiff, National Elevator Bargaining Association ("NEBA") is a multi-employer trade association incorporated under the laws of the State of Delaware with its principal office at 362 Cedar Lane, Teaneck, New Jersey.  NEBA is the representative for collective-bargaining purposes for employer-members who are engaged in the business of constructing, modernizing, repairing and maintaining elevators, escalators, dumbwaiters, moving walkways and similar devices for third parties such as building owners and general contractors in every state of the United States, including the State of Texas.

2.      Plaintiff KONE, Inc. ("KONE"), a Delaware corporation, with its headquarters located in Lisle, Illinois, and offices in other locations throughout the United States, including

1

DB1/63483184.1

Dallas, Texas, is engaged in the business of constructing, modernizing, repairing and servicing of elevators and escalators.  KONE is one of the employer-members of NEBA and is represented by NEBA for purposes of collective bargaining.

3.     KONE employs elevator constructor Mechanics, Helpers and Apprentices represented by the International Union of Elevator Constructors (the "IUEC") for and on behalf of its locals including Defendant IUEC Local 21 ("Local 21").

4.     This action, for a temporary restraining order, preliminary and permanent injunctive relief and damages for Defendants' improper and unlawful work stoppage and other interferences with the Plaintiff's operations in violation of a collective-bargaining agreement, is a suit for violation of the contract between an employer and a labor organization representing employees in an industry affecting commerce, as defined in the Labor Management Relations Act, 29 U.S.C. § 141 et seq.

5.     This Court has jurisdiction of this action pursuant to 29 U.S.C. § 185(a).

6.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2).

7.     NEBA and KONE are each employers within the meaning of Section 2(2) of the LMRA of 1947, as amended, 29 U.S.C. § 152(2).

8.     The IUEC, which has a principal place of business at 7154 Columbia Gateway Drive, Columbia, Maryland 21044, is the exclusive collective-bargaining representative of elevator constructor Mechanics, Helpers and Apprentices, for and on behalf of its locals, including Defendant IUEC Local 21, which has a principal place of business at 1924 Baird Farm Road, Suite 101, Arlington, Texas 76006-6524.  Local 21 represents elevator constructor Mechanics, Helpers and Apprentices employed by KONE in the Dallas/Fort Worth, Texas metropolitan area.

DB1/63483184.1

9.     The IUEC and Local 21 are labor organizations within the meaning of Section 2(5) of the LMRA of 1947, as amended, 29 U.S.C. § 152(5).

10.    Defendant Donald Mitchell is Local 21's Business Manager.

11.    Defendant James Murnan is Local 21's Business Representative.

## THE COLLECTIVE-BARGAINING AGREEMENT

12.    For many years prior to 2002, the IUEC entered into a series of five-year collective-bargaining agreements with the National Elevator Industry, Inc. ("NEII") a multi-employer bargaining group of which KONE was a member.  The IUEC-NEII contracts were referred to as the "Standard Agreements."  The last Standard Agreement was effective from July 9, 1997 to July 8, 2002.

13.    In 2002, KONE and other elevator companies withdrew from NEII for collective-bargaining purposes.  KONE negotiated its own collective-bargaining agreements with the IUEC, which each had a term of July 9, 2002 to July 8, 2007.  The IUEC entered into substantially similar agreements of identical duration with other former NEII members including but not limited to Otis Elevator Company ("Otis"), Schindler Elevator Corporation ("Schindler") and ThyssenKrupp Elevator Company ("Thyssen").  The IUEC characterized these agreements as identical, and referred to them collectively as the "Master Agreement."

14.    In 2007, NEBA, on behalf of KONE and its other employer-members, negotiated a collective-bargaining agreement with the IUEC on behalf of its affiliated local unions (the "NEBA Agreement") which has a term of July 9, 2007 to July 8, 2012.  A copy of the NEBA Agreement is attached hereto as Exhibit A.

15.    The NEBA Agreement has language substantially the same as the predecessor Master Agreement and the Standard Agreement in many articles.

3

DB1/63483184.1

16.     Article XIV of the NEBA Agreement expressly prohibits strikes during the term of the Agreement.  It provides in pertinent part:

## ARTICLE XIV
## STRIKES AND LOCKOUTS

**Par. 1.**  It is agreed by both parties to this Agreement that so long as the provisions herein contained are conformed to, no strikes or lockouts shall be ordered against either party.  It is understood that this Paragraph shall be applied and construed consistent with the provisions of Article IV, Par. 11 concerning Grievance and Arbitration procedure.

**Par. 2**. No strike will be called against the Company by the Union unless the strike is approved by the International Office of the International Union of Elevator constructors. Sufficient notice shall be given to the Company before a strike shall become effective. Except in the case of Contract Service Work as specified in Article IX of this Agreement, work stoppages brought about by lawful picketing or strikes by building trades local unions affiliated with Building Trades Councils shall not constitute a strike within the meaning of this Article.

**Par. 3.** In the event of a strike, work stoppage or lockout affecting Mechanics, Helpers and Apprentices on New Construction or Repair Work, men working on Contract Service shall not be affected by such strike, work stoppage or lockout, and the Union will supply competent men to the Company to do all work covered under Contract service whether such men are continuously employed in this work or not prior to the strike, work stoppage or lockout.

17.     Article XV of the NEBA Agreement requires that "[a]ny difference or dispute regarding the application and construction of this Agreement" shall be resolved under the grievance/arbitration procedure set forth in the Agreement, which provides for final and binding arbitration by an impartial arbitrator.

18.     The NEBA Agreement covers the terms and conditions of employment of elevator constructor Mechanics, Helpers and Apprentices employed by KONE in Texas.

4

DB1/63483184.1

**THE UNDERLYING DISPUTE AND THE UNLAWFUL WORK STOPPAGE**

19.     Under the NEBA Agreement elevator and escalator construction, service, repair and modernization work must be performed exclusively by elevator constructor Mechanics, Helpers and Apprentices.  Generally, a Helper or Apprentice works on construction under the direction of a Mechanic.  Except for limited situations, a Helper or Apprentice generally works with a Mechanic in a two-person team.

20.     Hiring is done on a Local-by-Local basis. Thus when KONE needs workers in Dallas, it must contact Local 21. In situations where KONE needs one or more additional qualified Mechanics but no qualified Mechanics are available locally, Article X, Par. 4 of the NEBA Agreement provides that an Apprentice possessing appropriate qualifications may work as a "Temporary Mechanic" ("TM"). Because of a shortage of Mechanics, KONE has frequently had to exercise its right to employ TMs in Local 21's jurisdiction.  Immediately prior to the action taken by Local 21 discussed below, KONE was employing at least nine TMs in Local 21's jurisdiction.

21.     Article X, Par. 4 of the NEBA Agreement further provides that a local union may request that employers "set back" their TMs (or return the TMs to Apprentice status) within 15 working days when a "qualified" Mechanic becomes available "in that Local."  Under Article X, Par. 4 of the NEBA Agreement, Local 21 is prohibited from withdrawing or failing to issue TM cards for the purpose of advancing the Union's position "with respect to a dispute unrelated to [Article X, par. 4]."

22.     On or about July 9, 2009, Local 21 Business Manager Don Mitchell sent KONE a letter informing the Company that there were "qualified Mechanics" available and that KONE

5

would have to set back its TMs within 15 working days.  Attached to this letter was a list of Mechanics available for work (known in the industry as the "open employment list").

23.    After asking for the open employment list, KONE was not provided one. However, KONE was informed that the list consisted of Mechanics from other local unions (known in the industry as "transient Mechanics").

24.    The local Mechanics on the open employment list were not qualified to work for KONE because they had previously worked for the Company, were discharged for cause, and were not eligible for rehire.

25.    No provision of the NEBA Agreement requires KONE to set back TMs because transient Mechanics are available.

26.    On or about July 15, 2009, KONE District Manager Mike Moore sent Local 21 Business Manager Mitchell a letter responding to his July 9, 2009 letter.  This letter stated that KONE was not required to set back its TMs because Local 21 had not established that there were qualified local Mechanics available.

27.    On or about July 31, 2009, KONE received a fax from Local 21 asserting that "[t]oday is the last day that any apprentice may work as a temporary mechanic in Local 21's jurisdiction."  The fax claimed that on Monday, August 3, 2009 "no apprentice may work as a temporary mechanic."

28.    In response to this fax, KONE District Manager Mike Moore called Local 21 Business Manager Don Mitchell and asked why the Union was re-calling TMs.  Local 21 Business Manager Mitchell responded that Local 21 was being pressured by the "International" to force the issue.  On the same day, KONE District Manager Moore sent a letter to Local 21

DB1/63483184.1

Business Manager Mitchell clarifying that the presence of transient Mechanics on the open employment list had no effect on KONE's ability to use TMs.

29.    On or about Monday, August 3, 2009, Local 21 sent KONE two documents by facsimile.  The first document purported to be an "Open Employment List:  Mechanic."  This list included the names of three Mechanics who were local Mechanics from Local 21's jurisdiction.  However, the three Mechanics were not qualified to work for KONE because they already had worked for KONE and were considered ineligible for rehire.  Local 21 Business Representative Jim Murnan previously acknowledged that these three former KONE employees were not qualified to work at KONE.

30.    The second document sent by Local 21 on August 3, 2009 was entitled "Mechanics Willing to Travel."  None of the individuals listed were from Local 21.

31.    On or about August 3, 2009, KONE District Manager Moore held a meeting with all of KONE's TMs in the Dallas area.  He explained the nature of the dispute between KONE and Local 21.  He told the TMs that they should continue to report to work as TMs as usual and that Local 21 could not direct them to contravene KONE's instructions.  At this meeting, KONE Temporary Mechanic Dave Massey reported that he had been contacted by Local 21 Business Representative Murnan and that Local 21 Business Representative Murnan had told him that he could be fined by the Union if he continued to work as a TM while there were Mechanics available on the open employment list.

32.    In the evening on or about August 4, 2009, Local 21 held a meeting with TMs.  After this Union meeting, several KONE TMs reported to KONE District Installation Manager Ronnie Smythe that the Union directed them not to work as TMs, and the Union had threatened

7

them with fines if they worked as TMs. These TMs informed District Installation Manager Smythe that they would not work as TMs starting August 5, 2009, as the Union had directed.

33.    On or about August 5, 2009, at about 8:00 a.m., KONE District Manager Moore met with TM Claudis Thurmon, KONE District Installation Manager Ronnie Smythe, KONE Installation Supervisor Todd Culver, and KONE Modernization Manager Devan Tolar at KONE's Branch Office in Coppell, Texas. District Manager Moore directed TM Thurmon to work as assigned by KONE. TM Thurmon refused to work as a TM. He told District Manager Moore that he was refusing to work under the direction of IUEC Local 21, and that Local 21 had threatened to fine a TM $2,000 if they worked as directed by KONE (and that the Union also threatened to fine any employee who worked with a TM). District Installation Manager Smythe, Installation Supervisor Culver, and Modernization Manager Tolar then met individually with TM Jeffert Kula and TM Jim Weddle. TM Kula and TM Weddle also refused to work as TMs as directed by KONE, and they also stated that they were following directions from Local 21 under threat of Union fines.

34.    On or about August 5, 2009, at about 10:40 a.m., KONE District Manager Moore met with six TMs as a group. He explained that their assignments were to work as TMs, and that if they refused to work as TMs, KONE had no other work for them. Again, all of the TMs refused to work as TMs, because they were directed by the Union (under threat of fines) not to work as TMs

35.    KONE District Manager Moore then sent a letter to Local 21 Business Manager Don Mitchell demanding that Local 21 cease and desist from engaging in its unlawful work stoppage. In this letter, he again reminded Local 21 Business Manager Mitchell that if Local 21 had a problem with KONE's use of TMs, its remedy was to use the grievance and arbitration

8

procedures of the NEBA Agreement, not to use unlawful strike pressure.  A copy of District Manager Moore's letter is attached hereto as Exhibit B.

36.     As a result of the Union's work stoppage, eight of KONE's nine TMs have refused to work, and work on several job sites has come to a halt (and work on other jobsites is now understaffed and delayed).  In addition to the eightTMs who have refused to work, the Apprentices who were assigned to work with them cannot work (because their work must be performed in a two-man team with a TM).  As a result, an additional seven Apprentices are also unable to work.

37.     The work stoppages described in the previous paragraphs is an illegal work stoppage over a dispute that is subject to the NEBA Agreement's grievance and arbitration provisions in violation of Articles XIV and XV of the Agreement.

38.     The unlawful acts specified herein were committed by Local 21 acting through its agents and members in concert with and/or at the direction of the IUEC.

39.     KONE has demanded that the IUEC and Local 21 cease the illegal work stoppage and comply with the Agreement, but the Unions have refused.

40.     The Defendants' coercive actions are in deliberate willful and calculated violation of the NEBA Agreement in disregard of the arbitration process.

41.     Upon information and belief, unless restrained by order of this Court, the concerted refusal to work by the employees represented by Defendants in violation of the Agreement will continue.

9

## THE IRREPARABLE HARM RESULTING FROM
## THE UNLAWFUL WORK STOPPAGE

42.    As a result of Local 21's directive, elevator and escalator construction work at several work sites throughout the Dallas area have come to a complete standstill.  KONE has been unable to proceed with construction at these sites in a timely manner.

43.    The Union's refusal to work is jeopardizing KONE's ability to complete construction at several job sites on time.  If the Union is persistent with its unlawful strike, KONE will not be able to complete its installation work as required under its contracts with customers.  Other aspects of construction at these sites cannot even begin until after the elevators are completed and will therefore also be delayed.  If the Union does not permit KONE employees to proceed with construction work immediately, it will be impossible to complete the elevator construction in a timely manner.

44.    Local 21's refusal to allow KONE's TMs to work is causing substantial and irreparable harm.  KONE currently employs nine TMs on various construction and modernization projects throughout the Dallas area.  On each of these projects, KONE has contracted with valued customers to complete its installations in a timely manner.  KONE competes with several other elevator and escalator manufacturers in an extremely competitive market for construction contracts awarded by many of the general contractors on whose projects KONE's TMs are now working.  If KONE cannot complete these projects to the customers' satisfaction, KONE's prospects of obtaining future elevator and escalator construction projects from these contractors will be adversely affected.  For instance, KONE has contracted with Sheraton Hotels and the Galleria Mall to complete timely escalator modernizations, successful completion of which is essential to obtaining new business across the nation.  Moreover, because large general contractors and owners often communicate with each other, any problems with

10

work on these projects will likely diminish KONE's ability to get jobs from an even larger number of contractors.

45.    On at least four of these projects, KONE's contract includes liquidated damages provisions for any failure to perform in a timely manner.  These damages provisions run from $1,000 to $12,500 in damages per day.

46.    Local 21's refusal to allow KONE's TMs to work has caused operations on several of these projects to come to a halt because, as explained above, the NEBA Agreement prevents KONE from assigning a team without a Mechanic to work on a project.  On several of these projects, only one team (consisting of one Mechanic and one Apprentice) is assigned to complete the work.  On these projects, work has come to a complete halt.

47.    Moreover, even on projects with more than one team assigned, KONE's ability to fulfill its contractual obligations in a timely manner is severely jeopardized because the teams including TMs are unable to continue work.

48.    The work stoppage is also interfering with work performed by other trades people at the projects on which TMs are assigned to work.  At present other building trades on several of these projects are waiting for KONE to complete elevator installation before they can continue to perform other work on the building.  Elevator construction must be closely coordinated with work being performed by other trades people and Local 21's interference with work on these projects will jeopardize other trades' ability to complete their work on time.

49.    The work stoppage has already harmed KONE's reputation and good will with its customers and the harm will increase the longer the work stoppage continues.

50.    The Union's insistence that KONE hire out-of-state Mechanics would cause substantial delay.  In addition to the time that would be needed for the Mechanics to travel from

11

their home state, they would need to attend KONE's safety training.  Then, they would need to be trained on KONE's equipment.  Then, they would need to be trained and oriented on the specific jobs where KONE needs Mechanics.

51.     In addition, KONE pays large sums of money annually to fund an Apprenticeship Program.  The Apprenticeship Program is intended to develop skilled Mechanics locally.  The Unions' actions threaten to harm the Apprenticeship Program by causing substantial delay in the progress of Apprentices (by forcing out-of-state Mechanics to perform the work that is locally available for Apprentices  locally).  Moreover, the Union's conduct threatens the on-the-job training of the Apprentices previously working for KONE as TMs.

52.     Finally, the Union's unlawful work stoppage is harming not only KONE and the TMs, it is also harming the Apprentices who were assigned to work with the TMs because they cannot work alone.  Consequently, seven Apprentices (in addition to the eight TMs) are threatened with layoffs and harm due to the Union's conduct.

53.     Unless the relief sought herein is granted, substantial and irreparable injury to KONE and its customer will follow.  The unlawful work stoppage is preventing KONE from fulfilling its contractual obligations and threatening KONE reputation and good will with customers.

54.     KONE has no adequate remedy at law for the injuries caused and threatened by Defendants' illegal conduct.

55.     Unless Defendants are enjoined from their illegal and unlawful acts, and are ordered to resume performance of work, such actions will continue to cause immediate, substantial and irreparable harm to KONE, the amount of which cannot be definitely ascertained, in that:

a.    KONE has been and will be unable to render adequate performance of its contractual obligations to construct elevators and escalators; and

b.    KONE will suffer temporary and permanent loss of business as a result of damage to its good will and reputation in the industry and its commercial relationships as a result of which its ability to bid on future jobs will be impaired;

56.    The effect on the Defendants, if injunctive relief is granted, is less onerous than the harm that will be suffered by KONE and its customers if the injunction is not granted.

57.    KONE has complied with all obligations imposed by law that are involved in this labor dispute.

58.    KONE has made every reasonable effort to settle this labor dispute.

59.    No prior application for the relief herein sought by KONE for similar relief has been made to any court or judge of the United States or of any state.

WHEREFORE, Plaintiffs request an expedited hearing in this matter and demand judgment:

(I)    Granting Plaintiffs a temporary restraining order, and a preliminary and permanent injunction, restraining and enjoining Defendants, their officers, agents, representatives, members, employees and attorneys and all persons acting in concert or participation with them, including but not limited to the individuals named as Defendants in this Verified Complaint, from in any manner or by any means:

(A)    calling, causing, inducing, encouraging, authorizing, conducting, continuing in or engaging in any strike, work stoppage, work slowdown, sit-down or any other refusal to work or act of coercion or interference with KONE's normal operations;

13

DB1/63483184.1

(B)      by Union discipline, penalty or otherwise, interfering with, or inducing or attempting to induce any person to interfere with any employee or agent of KONE in the course of any such employee's or agent's work for KONE;

(C)      by threats or otherwise, interfering with or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of KONE's operation, and from taking any action which would interfere with this Court's jurisdiction in the premises;

(D)      causing, inducing, conducting or carrying out any concerted activity of any kind having the effect of interfering with the KONE's normal operations prior to the hearing on Plaintiffs' application for a preliminary injunction;

(II)      Directing Defendants to take all reasonable means to communicate and effectuate the provisions of the orders issued by the Court, including but not limited to the holding of meetings with employees represented by Defendant Local 21, and the issuance forthwith of appropriate notices or other communications to the members, officers, and agents of Defendants, and all those in active concert with them; requiring the immediate return to work of all employees of KONE represented for collective-bargaining purposes by Defendants; and rescinding any oral or written notices, orders, directions, or requests to employees of KONE authorizing, directing, inducing or encouraging any strike, slow-down, work stoppage refusal to work or other limitation upon production;

(III)      Directing Defendants together with Plaintiffs forthwith to arbitrate, pursuant to the collective-bargaining agreement between Plaintiffs and Defendants, the present dispute; and

14

(IV)   Granting such other and further relief to which Plaintiffs may be entitled,

including damages, costs and disbursements of the action.

Respectfully submitted,

*/s/ John D. Bosco*
John D. Bosco
TX State Bar No. 24045533
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX  75201
Tel:   214-466-4000
Fax:   214-466-4001

A. John Harper II
TX State Bar No. 24032392
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana, Suite 4200
Houston, TX  77002
Tel:   713-890-5000
Fax:   713-890-5001

Timothy E. Copeland Jr.
Peter B. Robb
**DOWNS RACHLIN MARTIN PLLC**
28 Vernon Street, Suite 501
Brattleboro, VT  05302-00009
Telephone: 802-258-3070
Fax:  802-258-2286
E-mail:  tcopeland@drm.com

ATTORNEYS FOR PLAINTIFFS
NATIONAL ELEVATOR BARGAINING
ASSOCIATION AND KONE, INC.

DB1/63483184.1